## IN THE MATTER OF THE ESTATE OF FRANCES E. CHRISTENSEN, Deceased

Probate No. 89/93

Territorial Court of the Virgin Islands

Div. of St. Croix

March 25, 1998

Martial A. Webster, Esq., Kingshill, St. Croix, U.S.V.I., *for Estate*

Ronald E. Russell, Esq., U.S.V.I., *for Respondent*

STEELE, *Judge*

### MEMORANDUM OPINION

Before the court is a petition filed by coexecutor Edgar Christensen ("Petitioner") to remove coexecutor Art Turo Christensen ("Respondent") from his office of executor for breaching his fiduciary duties. A two-day bench trial was conducted.

137

Subsequent to the hearing, respondent's counsel filed Motion for Attorney's Fees and Costs. Based on the testimony of the parties and the evidence introduced, the Court finds respondent to have violated his fiduciary duties as executor of the estate of Frances E. Christensen. Based on this finding of breach of fiduciary duties, the Court denies the Motion for Attorney's Fees and Costs.

## II. Findings

On March 21, 1993, Frances E. Christensen ("decedent") died testate leaving a substantial estate. Decedent's will designated two individuals to act as co-executors: Edgar Christensen ("petitioner") and Art Turo Christensen ("respondent"). Both coexecutors are also heirs of the estate. Soon after their appointments, petitioner and respondent agreed on dividing their responsibilities and duties. Respondent agreed to collect the rents from the estate's real properties, and to pay any expenses relating to their maintenance. Petitioner assumed all responsibilities regarding the receipt and supervision of the bank statements relating the estate's bank account.[1]

On May, 1997, petitioner filed petition to remove respondent for violating his fiduciary duties, and responsibilities. Respondent contends that the removal is only a pretext for a more problematic situation: petitioner's dispute with respondent as to the will's interpretation, and each party's respective share of the estate.

During trial, petitioner's most compelling and relevant witness was the estate's former attorney Yvette Ross, who began representing the estate on September 1995. Attorney Ross testified that soon after she was retained, she mailed letters to respondent requesting receipts for all the rents and expenditures relevant to the estate's properties.[2] After a delay of months, attorney Ross testified that respondent brought in some handwritten accountings supported by very few receipts. According to attorney Ross, the accountings

---

[1] The estate initially started out with one bank account. However, one of the former attorneys for the estate Edgar Ross, now a judge of the Territorial Court, advised against respondent's handling of the rent proceeds, and decided that a second account where rents would be deposited to be in the best interest of the estate.

[2] Petitioner introduced into evidence several letters mailed to respondent by attorney Ross requesting receipts and accountings relating to the estate.

demonstrated a discrepancy of some $4,000. As a result, attorney Ross made numerous calls to petitioner to resolve the discrepancy, but the calls went unanswered.

That accounting inconsistency resulted in attorney Ross's decision to hire a certified public accountant. On cross-examination of attorney Ross, respondent's counsel attempted to demonstrate that attorney Ross hired the accountant solely to find some fault with respondent's self-prepared handwritten accounting. However, this line of cross-examination failed to substantiate such charge, and attorney Ross explained her decision to hire accountant Sandra Webster based on her opinion that respondent was not forthcoming with all the proper documents, and that therefore an accountant was needed to determine the assets and cash flow of the estate.

Attorney Ross testified that when she began representation of the estate, she was aware of only two rental properties, the Rainbow Beach Property, and the Posterity Beach Front Property. The third property, the Smithfield property was never disclosed to her until January 1996. Respondent did not inform attorney Ross that the tenant of the Smithfield property had not payed rents for months, causing the estate to suffer losses in rents. This problem however was not brought to attorney Ross's attention until January 1996; attorney Ross subsequently brought suit and recovered the back rents.

Aside of her testimony regarding respondent's failure to cooperate and properly account for the estate's monetary proceeds, attorney Ross testified that respondent made monthly payments from the estate's funds to his daughter Diane Christensen pursuant to an alleged oral contract between respondent and decedent, prior to her death. These payments are indicated by the accountings prepared and filed by respondent. Although respondent explained these payments as stemming from an oral agreement between him and decedent, no proof of such agreement was provided to the Court.

Testimony by petitioner and the estate's attorney indicate that respondent refused to cooperate with the appraisers of the property. Respondent testified that his dispute with the appraisers was the result of respondent's dissatisfaction with the way in which the appraiser parked his vehicle in front of respondent's property.

Furthermore, testimony was introduced regarding respondent's contentious disagreements with the land surveyors — who were retained to map out the estate's properties — that such surveyor's were attempting to reduce respondent's interest in the estate. Testimony was also introduced regarding disputes between the two co-executors. The dispute stems from respondent's different interpretation of the will from that of the surveyors' three maps. Apparently, respondent harbors a different interpretation of the will's devise than those of the surveyors' maps. Respondent contends that such interpretation of the maps would result in petitioner receiving a larger share of the estate. This dispute took one step further with respondent's assertions of allegations of conspiracy between petitioner and the surveyors. As a result of these allegations, the surveyors' and the appraisers' work was severely delayed.

Furthermore, and perhaps, the most damning of evidence against respondent's handling of his fiduciary position, and as further shown by respondent's accountings, is the repayments from the estate's assets of a loan procured by respondent personally from Nova Scotia Bank. Clearly, this loan was never procured by decedent, nor does the will indicate any special provisions regarding the repayment of such loan from decedent's estate. The accounting submitted by respondent himself demonstrates monthly payments from the estate's asset against the loan balance, until its satisfaction on January 26, 1995. Finally, attorney Ross testified that respondent, without the estate's counsel or petitioner's knowledge, reallocated $500 from a monthly rent of $1,500 from the Rainbow property without proof of an agreement between Rainbow and respondent to show that the $500 allocation was due the Rainbow property owner's use of respondent's adjacent parking lot.

Respondent, in his defense, submitted various receipts, accountings, and documents to substantiate his compliance with his duties as a co-executor.[3] The accountings reflected the months of May 1993 through December 1995. Although respondent submitted

[3] Respondent filed hand-written accountings for the months from May 1993 through December of 1995. Each folder reflects a different month, and includes handwritten sheets showing rents received and expenditures.

these accountings into evidence, respondent did not properly explain why such accountings were not made available to the estate's counsel upon request back in 1995.

A review of these accountings show payments to respondent's daughter Diane Christensen, despite lack of consent by the estate's attorney and the other co-executor; while other accountings reflect incomplete reports of rental receipt amounts. For example, the accountings submitted for the months of July and August of 1995 do not indicate the amount of rents received by respondent, and almost none of the accountings show receipts for rents received that should have been issued by respondent to the tenants of the estate's properties.

Subsequent to the trial, the parties submitted written summations outlining their arguments. Further, respondent's counsel filed a Motion for Attorney's Fees and Costs seeking the amount of $10,061. Based on the facts stated thus far, the evidence introduced, and the parties testimonial credibility, the Court is asked to determine whether respondent should be removed from his trust office of executor.

## III. Discussion

The question raised here is whether respondent-coexecutor Art Turo Christensen violated his fiduciary duties as a co-executor thereby warranting his removal under 15 V.I.C. § 240. We answer this question in the affirmative.

### A. The Law of Revocation of Testamentary Letters

■ The Virgin Islands Probate Code prescribes stringent ethical standards of a person holding the trust office of executor or administrator. This stringency stems from the uncompromising statutory language of 15 V.I.C. § 240, which provides in pertinent part:

"....

(b) Any heir, legatee, devisee, creditor, or other person interested in the estate may apply for the removal of an executor . . . who has in *any* way been unfaithful to or neglectful of his trust, to the probable loss of the applicant."

15 V.I.C. 240(b) (emphasis supplied).

■ A reading of the above statutory language reveals that determination of an executor's removal mandates a two pronged inquiry:

> 1) whether the executor has "in any way been *unfaithful to or neglectful* of his trust"; and if so,

> 2) whether such unfaithfulness or neglect caused *"probable loss"* to the applicant petitioning removal.

15 V.I.C. 240(b).

Accordingly, the Court here must first determine whether respondent was unfaithful or neglectful of his fiduciary duties; and secondly, whether his conduct caused the petitioning party, here decedent's estate, probable loss. We address each question separately.

*B. Co-executor Art Turo Christensen Neglected His Fiduciary Duties Causing Loss and Delay to the Estate*

■ In the instant matter, the Court finds respondent's manner and conduct in executing his office of executor to have run afoul of the strict legal standard of care required of an executor under 15 V.I.C. § 240(b). The language of 15 V.I.C. § 240(b) utilizes the words "in any way" to guide the Court in its inquiry of what constitutes breach of fiduciary duties in executor removal actions. We find this type of language broadly covers any conduct that may attend harm or delay to the administration of an estate. Although a research of Virgin Islands case law interpreting the language of 15 V.I.C. § 240 finds no meaningful precedents, nor does there exists a specific statute defining the duties of an executor, we hold that an executor must, at a minimum, act in a manner consistent with the duties of a guardian as mandated by 15 V.I.C. § 825.

While the court finds no evidence of any "unfaithful" conduct by respondent, the parties' testimony, coupled with the accountings filed with the court, demonstrate neglect and dereliction of fiduciary duties by respondent.

Here, petitioner violated his fiduciary duties by first, failing to cooperate with the attorney of the estate; the first being attorney Edgar Ross, and the second attorney, Yvette Ross. This lack of

142

cooperation resulted in the attorneys issuing several warnings to respondent to come in line with the requirements of his office. The Court notes that significant periods of time were allowed by the estate's attorneys to respondent to enable him to provide the necessary accountings and receipts. Although respondent argues that the removal petition is a pretext to a more deeper problem, namely the disagreements between respondent and petitioner as to the interpretation of the will, we find no evidence of such an assertion.

Second, respondent failed to properly provide immediate accountings of all the funds received, and all relevant expenditures from the estate's properties, and to cooperate with Sandra Webster, the Certified Public Accountant hired to develop a full and clear accounting for the estate. This repeated failure by respondent to provide the attorney of the estate with all the necessary receipts also delayed the accountant's work to expediently account for the estate's assets and cash flow.

Respondent testified that a conflict of interest existed regarding the Sandra Webster's position as the accountant of the estate and wife of the estate's current attorney, Martial Webster. However, the Court notes that attorney Martial Webster was never retained by the estate prior to the instant removal proceedings, which happens to be long after accountant Sandra Webster concluded her professional engagement with the estate. Accordingly, respondent's contention that the hiring of Sandra Webster as an accountant of the estate constitutes conflict of interest, and thus should some how impugn the credibility of Mrs. Webster's testimony and the results of her accounting services to the estate, is simply without merit.

Third, respondent's refusal to meet with and constructively reconcile his differences with the surveyors frustrated the estate's conclusion. Respondent's contention that the surveyors' interpretation of the decedent's will did not properly reflect decedent's testamentary intent does not vest him the right to refuse to cooperate with the surveyors, and accuse everyone of collusion to reduce his share of the estate. Although respondent's right to ascertain his proper share of the estate is paramount, and is duly noted by this Court, when acting as an executor, respondent must

be able to separate his status as an heir from his responsibilities and duties as executor. Any objections to the surveyor's interpretations should have been brought to the court's attention by way of petition. Failure by the heirs to agree on the interpretation of the will is not an uncommon phenomena, and all such matters are reserved for the probate court to resolve. The office of executor should never be utilized to achieve one coexecutor-heir's different interpretation of the will, or any other type of dispute with the other heirs. Therefore, respondent's disagreements as to the interpretation of the will should never factor into his decision to mistreat the surveyors, and conclude the estate in an efficient and expedient matter.

Last but not least, the court notes respondent's inexcusable use of the estate's funds to repay a personal loan to pay the property taxes on properties owned by decedent prior to her death to facilitate decedent's conveyance of such properties to respondent. Without more, this use of the estate's funds alone is grounds for an executor's removal.

## IV. Conclusion

The office of executor entails responsibilities and duties of paramount importance. These duties must be upheld strictly to afford a decedent's estate the expedient conclusion it deserves. Further, while an executor may also be the heir of an estate, such status does not entitle him to contest the interpretation of the will with other heirs, or co-executors. To do so, would stifle proper administration, and bring about great financial injury to the estate and the heirs.

■ Here, the Court finds that respondent-coexecutor's misuse of the estate's funds, delay in providing accountings, severe disputes with petitioner, the land appraisers, the attorney of the estate, and the land surveyors has severely hampered the administration of the estate. This noted delay and misuse of funds required this estate to enter into its fifth year of administration, causing the estate significant loss. Thus, the court finds the removal of respondent as co-executor of the estate to be warranted under the facts presented by petitioner.

## ORDER

Before the Court is a Petition for the removal of co-executor Art Ruto Christensen, filed by co-executor Edgar Christensen. A bench trial was conducted on May and October of 1997. Subsequent to the trial, a Motion for Costs and Attorney's Fees, and a Memorandum in support thereof, was filed by attorney Ronald Russell, counsel for co-executor Art Turo Christensen in the amount of $10,061.00. An oppositional response was filed by attorney Martial Webster counsel for co-executor Edgar Christensen, and the estate. For the reasons stated in the accompanying Memorandum Opinion, it is hereby

ORDERED that the Petition for removal of co-executor Art Turo Christensen is APPROVED; it is further ORDERED that Art Turo Christensen is removed as co-executor of the estate of Frances E. Christensen.

ORDERED that the Motion for Costs and Attorney's Fees is DENIED.

ORDERED that copies of this Order and accompanying Memorandum Opinion be served on the parties of record.

DONE AND SO ORDERED this Wednesday, March 25, 1998.